THREATT v. THREATT.

Division A.   Nov. 19, 1951.

No. 38082 (54 So. (2d) 907)

Roy N. Lee and James W. Lee, for appellant.

A. B. Amis, Jr., for appellee.

### McGehee, C. J.

This is a suit to cancel a deed of record from the appellant to the appellee for 120 acres of land on the ground that the same never became effective because of nondelivery thereof by the former as grantor to the latter as grantee.

In September 1937, the appellant, E. M. Threatt, then residing at Eastland, Texas, and who was the owner of the fee simple title of the 120 acres of land in Newton County, concluded to sell the same to the appellee, O. J. Threatt, after having first conducted some preliminary negotiations in regard thereto through correspondence by mail with his uncle, J. D. Threatt, who is the father of the appellee, and who resided at Collinsville near the land and had been looking after the same for the said owner.

The land had been previously sold for delinquent taxes and the title would have matured on September 17, 1937, unless the same had been redeemed prior thereto from the tax sale. The sum of $129.09 was the amount required to be paid to effectuate the redemption.

The proof discloses that on August 27, 1937, the appellant, E. M. Threatt, wrote his uncle, J. D. Threatt, at

Collinsville, that he had made arrangements to get the money from a bank to redeem the land, but that he would have to pay it back to the bank at $20 per month which would work a hardship on him in view of his then financial circumstances, and stated further that "We (meaning he and his wife) have talked it over and have decided to sell the land to Oliver (the appellee, O. J. Threatt) if he will give me anything reasonable for it. Tell Oliver he can make me his best proposition and if I accept it, I will let him know and if I reject it I will go get the money from the bank and pay the taxes and keep the land."

That on September 4, 1937, a letter in reply to the one of August 27th was sent by mail to the appellant, E. M. Threatt at Eastland, Texas, purporting to have been signed by J. D. Threatt, in which it was stated, among other things, "Oliver said he would give you $300 for the place and pay the taxes on it and pay 150 in '38 and 150 in '39. He said that was the best he could do, and there are people that is just waiting for the time to come so they can pick it up. He wants you to give him a deed for the place and then take a deed of trust for security."

The appellant testified, and it is undisputed, that Sadie, the daughter of J. D. Threatt wrote the letters for her father in regard to the matter, since he was a very elderly man, partially blind. It is also undisputed that the appellee had no correspondence whatever with the appellant in regard to purchasing the land. He was asked by his attorney "Had you had any communication from Mr. E. M. Threatt prior to the time you said you received this deed in the mail?", and he replied "No, my dad is the one."

On September 14, 1937, the appellant, after having on the previous day executed a deed to the land in favor of the appellee, O. J. Threatt, wrote to his uncle, J. D. Threatt, a letter in which he stated, among other things, the following: "I am herewith enclosing a deed to my

land for Oliver. I am also sending a deed of trust all ready to sign and two notes for $150 each, one due December 15, 1938, one due December 15, 1939. I want you to have Oliver and Gracie to sign these notes and deed of trust before a notary public or justice of the peace *before you give him the deed* \* \* \* If for any reason Oliver does not pay the taxes by the 17th, please wire me collect. Your nephew, E. M. Threatt.'' (Italics ours.)

The appellant testified that he mailed the original of the foregoing letter to J. D. Threatt in an envelope addressed to him at Collinsville, Mississippi, postage prepaid, through U. S. Mail, and that there were enclosed in the envelope with the letter the deed, the two notes, and the deed of trust on the land. ██ █ The presumption is therefore that they were duly received by him, and it became incumbent upon the appellee, O. J. Threatt, to rebut this presumption by credible evidence so as to show that the deed, notes, deed of trust and the letter of instruction were not received by the addressee, J. D. Threatt.

It appears that at the time of the trial of this cause, the alleged addressee of the letter, which contained the deed, notes and deed of trust, had reached the age of 91 years and he was neither summoned to court nor his deposition taken by either of the parties to show his version as to what offer he had been authorized by his son Oliver to submit to his nephew, E. M. Threatt, for the purchase of the land, or on what terms and in what manner the acceptance of the offer was communicated to him from his said nephew as the owner of the land. Neither did the appellee, O. J. Threatt, offer as a witness his sister, Sadie, to prove what offer he had submitted through his father in her handwriting to the owner of the land as a purchase price thereof, it being undisputed that she was the person who wrote all the letters on behalf of J. D. Threatt to the owner of the land, as aforesaid.

Upon the trial, the appellee testified that he received in an envelope addressed to him the deed in his favor for the land in question through the mail at his mail box, which was located not far from the mail box of his father, J. D. Threatt; that when he went from his mail box to his home and opened the envelope which contained the deed, there was no letter, notes or a deed of trust enclosed therein; and that the envelope was opened at his home in the presence of his wife, who corroborated him as a witness in regard to the contents of the envelope when the same was opened. However, we are of the opinion that it is wholly unreasonable to suppose that E. M. Threatt, as owner of the land, and who had admittedly had all of his negotiations with his uncle, J. D. Threatt, and had, according to the undisputed testimony, received the letter written on September 4, 1937, by Sadie in the name of J. D. Threatt, saying that "Oliver said he would give you $300 for the place and pay the taxes on it and pay 150 in '38 and 150 in '39" would have mailed this deed direct to the appellee, O. J. Threatt, as grantee without some instructions as to the execution of the notes for the two deferred payments. It is also contrary to human experience and the other facts in the case that the alleged grantor would have given this 120 acres of land to the appellee without consideration to be paid to him therefor, or that the alleged grantee would in such event have failed to ever write and thank him for the deed, which he admittedly did not do. The only reasonable conclusion is, in our opinion, that either the mail carrier put the envelope containing the letter of instruction, deed, notes and deed of trust in the mail box of O. J. Threatt instead of that of J. D. Threatt, or that on the other hand they were all received by J. D. Threatt through the mail and that he entrusted the same to his son, thinking that he would execute the notes and deed of trust in favor of E. M. Threatt before having the deed recorded.

But, it is insisted by the appellee that he only authorized his father J. D. Threatt to write to E. M. Threatt, and tell him that if he wanted "to give me the land" I would be willing to pay up the taxes on it; and that he did not authorize any other offer to be submitted on his behalf. In response to this contention, it would seem altogether unreasonable that the appellee's own father would have communicated through Sadie without authority from him so to do the offer of $300 and payment of the taxes necessary to redeem the land, or that Sadie, the sister of appellee, would have assumed to submit the above mentioned offer to E. M. Threatt unless she had been duly authorized so to do. It is undisputed that she did submit such offer by letter in the name of J. D. Threatt, as being on behalf of her brother, O. J. Threatt, and the original letter written by her to E. M. Threatt in that behalf was introduced in evidence by the latter. Sadie did not testify at the trial.

Moreover, whether the offer to pay $300 and the back taxes on the land was authorized by O. J. Threatt or not, the fact remains that it was acted upon by E. M. Threatt after being communicated to him in the manner hereinbefore stated, and if O. J. Threatt intended to submit a different offer, then there was no meeting of the minds of the grantor and grantee as to the price and terms of the sale, since there was no evidence offered by the appellee, O. J. Threatt, to show that any other offer was actually submitted on his behalf to the grantor in the deed other than the offer communicated in the letter of September 4, 1937, written by his sister Sadie. In such event the deed was invalid.

We are of the opinion that ▮▮ ▮ it was error to dismiss the amended bill of complaint filed by E. M. Threatt and wife to cancel the deed of conveyance from them to the appellee, for the reason that in our opinion it is manifestly shown by the great weight of the evidence that there was no delivery of the deed to the said purported grantee. He was given notice to produce at the

trial the original letters written by E. M. Threatt to the father and agent of the said grantee, since they were written to him as the agent of both parties through whom the grantee had submitted any offer that he may have made to purchase the land. ██ ██ The original letter, if in the possession of appellee's father was more under the control of appellee than of appellant, and on his failure to produce them it was competent for the appellant to introduce the carbon copy thereof which he had retained in his possession.

Moreover, the appellee admitted receiving the envelope which contained the deed; and the carbon copy of the letter of instructions, as well as the positive testimony of the appellant, discloses that the enclosures mentioned were in the envelope with the deed. The carbon copy of the letter shows on its face, and beyond question, that it is not a fabricated copy made for use at the trial, but is a copy of an original letter written in connection with the mailing of the deed. Then, too, it was shown without dispute that the grantor in the deed thereafter made at least two inquiries of his uncle, J. D. Threatt, and subsequent inquiries of the appellee in regard to the failure to execute and return the notes and deed of trust, and the appellant thereafter sought unsuccessfully to pay off a deed of trust given by the appellee and his wife to a third person for a loan of $225, and to have the same transferred to the appellant for his protection because of the fact that he had no written security on the land for the purchase price thereof.

We think that the exclusion of the copies of these letters, when offered in evidence, was error, under the circumstances. The defendant grantee should have produced the originals unless they had been lost or destroyed, and which latter event could have rendered the copies admissible.

We have concluded to reverse and remand the cause for a new trial for the reasons hereinbefore stated, since we do not think that on the record before us the decree

which held in effect that the deed had been delivered should be upheld under the principle announced by the following authorities: 18 C. J. 206, Section 105; 26 C. J. S., Deeds, Sec. 43; Harkreader v. Clayton, 56 Miss. 383; Barner v. Lehr, 190 Miss. 77, 199 So. 273; Morgan v. Hazlehurst Lodge, 53 Miss. 665; Wilson v. Bridgforth, 108 Miss. 199, 66 So. 524; Ladner v. Moran, 190 Miss. 826, 1 So. (2d) 781; 18 C. J. 413, Section 492; 26 C. J. S., Deeds, Sec. 183; Lynch v. Lynch, 121 Miss. 752, 83 So. 807.

The rule announced under these authorities is specifically stated in 18 C. J. 206, Section 105, as follows: ''Where a deed is given to a third person to hold until the performance of some act by the grantee or the happening of some contingency, it does not operate as a delivery to the grantee, and a delivery by the depositary contrary to the directions of the grantor will not pass the title. Where a deed is delivered to a third person upon condition, the grantor may of course waive such condition.'' See, also, 26 C. J. S., Deeds, Sec. 43.

Upon a new trial of the cause, if the proof, including the evidence which was excluded on the former trial, should show the complainant to be entitled to the relief sought, and should offer to do equity in the premises in regard to the taxes paid by the appellee in redeeming the land, the court may adjust the equities between the parties in regard to the payment of such taxes by the appellee and his use and occupation of the land subsequent thereto, to the extent justified by the pleadings and proof at the time of a new trial.

Reversed and remanded.

**Lee, J.,** took no part in the decision of this case.